IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDA WHEAT-CROSS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHELLE KING,[1] )<br>Acting Commisoner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-23-366-GLJ |

## OPINION AND ORDER

Claimant Linda Wheat-Cross requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On January 21, 2025, Michelle King became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. King is substituted for Kilolo Kijakazi as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human*

---

[2] Step one requires Claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If Claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, Claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If Claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that Claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that Claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was forty-five years old at the time of the most recent administrative hearing. (Tr. 1360). She completed tenth grade and has previously worked as a housekeeper/cleaner and receptionist. (Tr. 189, 1314, 1385). Claimant alleges she has been unable to work since December 29, 2016, due to granulomatous lobular mastitis, chronic breast pain, kidney disease, three fractured vertebrae, anxiety, depression, back pain, hyperthyroidism, memory loss, and high blood pressure. (Tr. 188, 1303).

## Procedural History

Claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 29, 2016. Her application was denied. ALJ Anne H. Pate conducted an administrative hearing and determined that Claimant was not disabled in a written decision dated October 11, 2018. (Tr. 16-25). The Appeals Council denied review, but this Court reversed following an unopposed motion and remanded the case on May 11, 2020. (Tr. 1398-1399). On remand, ALJ Derek N. Phillips conducted a second administrative hearing and again determined Claimant was not disabled, in a written decision dated March 31, 2021. (Tr. 1437-1447). The Appeals Council then remanded the case, and ALJ Phillips conducted a third administrative hearing and again concluded Claimant was not disabled in a written decision dated March 1, 2023

(Tr. 1301-1316). The Appeals Council denied review, so ALJ Phillips's March 2023 decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he determined Claimant had the severe impairments of obesity, sciatica, chronic pain syndrome, granulomatous mastitis, major depressive disorder, and generalized anxiety disorder, as well as the nonsevere impairments of hypertension, hypokalemia, nicotine dependence disorder, and thyroid disorder. (Tr. 1303). The ALJ then determined at step three that Claimant's impairments did not meet a Listing. At step four, he found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), *i.e.*, she can lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, and sit and stand/walk for six hours each. Additionally, he found she could frequently operate foot controls bilaterally; operate hand controls occasionally with her left upper extremity; reach overhead and in all other directions with her right upper extremity frequently, but only occasionally with her left upper extremity; frequently handle, finger, and feel with her left upper extremity; occasionally balance, stoop, kneel, crouch, and/or climb ramps/stairs, but never crawl or climb ladders/ropes/scaffolds; and she can never work at unprotected heights, but she can occasionally work around moving mechanical parts, operate a motor vehicle, and tolerate exposures to vibration and/or extremes of cold/heat. Further, he found she can hear and understand simple, oral instructions; she can perform simple, routine tasks; can interaction with supervisors and

co-workers frequently but only occasionally with the public; can make simple work-related decisions; and is likely to be off task for less than 10% of the time in an 8-hour workday. (Tr. 1306).  The ALJ then concluded that although the claimant cannot return to her past relevant work, she is nevertheless not disabled because there is other work in the national economy that she could perform, *e.g.*, marker, router, and mail clerk.  (Tr. 1314-1315).

## Review

The claimant's sole contention of error is that that she cannot perform the jobs identified at step five in light of the assigned RFC.  Because this contention lacks merit, the decision of the Commissioner should be affirmed.

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") regarding Claimant's past relevant work.  (Tr. 1384-1385).  He then posed a hypothetical matching the above-mentioned RFC to determine if there were other jobs Claimant could perform, specifically including the limitations to be "able to remember, understand simple oral instructions," "able to perform simple, routine, tasks," and making "simple work-related decisions."  (Tr. 1385).  The VE indicated that Claimant could not perform any of her past work but identified three jobs classified as "light" work that such a person could perform: (i) marker, DICOT § 209.587-034, with 136,000 jobs available in the national economy; (ii) router, DICOT § 222.587-038, with 25,000 jobs available; and (iii) mail clerk, DICOT § 209.687-026, with 11,300 jobs available.  (Tr. 1386).  The VE further testified that the information she provided was consistent with the Dictionary of Occupational Titles ("DICOT" or "DOT"), but that her testimony related to reaching in all other directions and reaching overhead, off-task behavior, and engagement with

-5-

supervisors, coworkers, and the general public were based on her professional experience and education (Tr. 1387).

As relevant to this appeal, the ALJ in his written decision adopted the VE's testimony that Claimant could perform the light jobs of marker, router, and mail clerk (Tr. 1315).  Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DICOT]."  (Tr. 1315).  Claimant, however, asserts that the ALJ erred in identifying jobs she could perform because there was a conflict between the information provided and the DOT.

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*."  Soc. Sec. R. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].  Although the VE did not identify any conflict between his testimony and the DOT, Claimant contends there is a conflict regarding the reasoning levels of the jobs identified as applied to her RFC.  *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The relevant language from Claimant's assessed RFC states Claimant can "hear and understand simple, oral instructions," "can perform simple, routine tasks," and "can make

simple, work-related decisions." (Tr. 1306). Of the three identified, the marker and router jobs have reasoning levels of 2.[3] *See* DICOT §§ 209.587-034, 222.587-038. Reasoning Level 2 requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 209.587-034, 222.587-038. The third job (mail clerk) has a reasoning level of 3. Reasoning Level 3 requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DICOT § 209.687-026. The reasoning levels for jobs in the DICOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted].

Claimant contends that all three jobs identified pose a conflict because the ALJ limited her to "simple, oral instructions," and therefore she must be limited to a reasoning level of 1. Reasoning Level 1 requires a worker to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" and to "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See,*

---

[3] Each DICOT job listing has both an SVP ("Specific Vocational Prep") level, as well as a reasoning level, and they are not always identical. Here, all three jobs have an SVP of 2. *See* DICOT §§ 209.587-034, 222.587-038, 209.687-026.

*e.g.*, DICOT 361.687-018 (Laundry Laborer) ("Reasoning: Level 1 – Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variable in or from these situations encountered on the job.") (used for definition purposes only). Claimant contends, as some (but not all) District Judges in the Western District of Oklahoma have found, that there is a material distinction between simple *instructions* and simple *tasks* such that simple *tasks* are admittedly compatible with Reasoning Level 2, but a limitation to simple *instructions* is only compatible with a Reasoning Level 1. *See Chatmon v. Kijakazi*, 2023 WL 5395942, at *3 (W.D. Okla. Aug. 22, 2023) ("[T]his Court has generally drawn a distinction between simple tasks and simple instructions when determining whether an RFC containing such limitations conflicts with level two reasoning.") (citing *Paulek v. Colvin*, 662 Fed. Appx. 588, 594 (10th Cir. 2016) ("While we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning.") (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) and *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (limitation to "simple and routine work tasks" "seems inconsistent with the demands of level-three reasoning.")) (collecting cases). *But see Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022) (describing *Lucy* as "suggesting *in dicta* that there may be a conflict between the ability to understand and carry out simple instructions and the ability to understand and carry out detailed instructions.") (emphasis added).

If a claimant is limited to simple tasks and simple instructions, it stands to reason

that a job requiring the ability to deal with problems involving several concrete variables (Reasoning Level 3) would create a conflict.  *See McKinnon v. Astrue*, 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart*, 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps.").  Accordingly, the job of mail clerk, with a Reasoning Level of 3, poses a conflict.

The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing both simple tasks and simple instructions as part of the RFC assigned here, although a reasoning level of three is not, and that other courts have reached the same conclusion.  *See Stone v. Kijakazi*, 2023 WL 5058858, at *3 (W.D. Okla. Aug. 8, 2023) ("This Court has 'repeatedly rejected Plaintiff's argument and found that a limitation to understanding, remembering, and carrying out simple instructions does not create an apparent conflict with occupations requiring GED [r]easoning [l]evel 2.'") (quoting *Robertson v. Kijakazi*, 2023 WL 1871110, at *3 (W.D. Okla. Feb. 9, 2023) (collecting cases)); *Ray v. Comm'r of Soc. Sec.*, 2019 WL 1474007, at *5 (W.D. Okla. Apr. 3, 2019) ("The court finds that, on its face, the description for a reasoning level of 2—the ability 'to carry out detailed but uninvolved written or oral instructions'—does not conflict with Plaintiff's RFC limitation to carrying 'out simple work-related instructions and tasks.'"); *Espinosa v. Kijakazi*, 2021 WL 5280968, at *4 (W.D. Okla. Nov. 12, 2021) ("The Tenth Circuit has indicated that a limitation to simple, routine, and repetitive work involving one

to two step instructions is consistent with a reasoning level of two."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions[,] [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two."); *see also Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."); *Danette Renee G. v. Kijakazi*, 2022 WL 17338283, at *15 (D. Kan. Nov. 30, 2022) ("Reasoning Level 2 was not the specific issue in *Hackett* but this court does not find justification therein to extend its prohibition to Reasoning Level 2 in the face of DOT Appendix C and the definition of unskilled work, in the face of *Hackett*'s specific statement regarding Reasoning Level 2, and absent a specific holding by that court binding on this court."). *But see Chatmon* 2023 WL 5395942, at *3 ("[T]his Court has generally drawn a distinction between simple tasks and simple instructions when determining whether an RFC containing such limitations conflicts with level two reasoning.") (collecting cases). Accordingly, the marker and router jobs do not pose a conflict. *See Stokes,* 274 Fed. Appx. at 684 (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform).

To the extend the ALJ's conclusion that Claimant could perform the job of mail clerk is error, the Court finds this to be harmless error because the two remaining jobs exist in significant numbers. "[T]here is no bright-line answer to how many jobs are enough for

a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100 . . . and 152,000, . . . to be sufficient so far for application of harmless error." *Evans v. Colvin*, 640 Fed. Appx. 736 (10th Cir. 2016). In this case, the two remaining jobs meet this threshold. *See* DICOT § 209.587-034 (Marker, 136,000 jobs available in the national economy); DICOT § 222.587-038, (Router, with 25,000 jobs available). Accordingly, the decision of the ALJ should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 13th day of February, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**